IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| JULIE A. LITWHILER,            )<br>                                           )<br>          **Plaintiff,**      )<br>                                           )<br> v.                                     )<br>                                           )<br>                                           )<br> JO ANNE B. BARNHART,  )<br> COMMISSIONER OF        )<br> SOCIAL SECURITY,          )<br>                                           )<br>          **Defendant.**    )<br>                                           ) | **CIVIL ACTION**<br><br>**No. 04-2550-CM** |

## **MEMORANDUM AND ORDER**

Plaintiff Julie A. Litwhiler protectively filed an application for social security benefits under the Social Security Act ("SSA"), 42 U.S.C. §§ 401 *et seq*, on December 26, 2001, seeking a period of disability commencing on September 31, 2001[1] and disability insurance benefits under Title II of the SSA. Plaintiff's application was denied initially and after reconsideration. On May 18, 2004, after an administrative hearing, an administrative law judge ("ALJ") found that plaintiff was not disabled prior to her date last insured of September 30, 2000 and thus was not entitled to a period of disability and disability insurance benefits. On September 7, 2004, the Appeals Council of the Social Security Administration denied plaintiff's request for review of the ALJ's decision. Thus, the ALJ's decision stands as the Commissioner of Social Security's final decision. This matter comes before the court

---

[1] Plaintiff's Motion for Judgment states that she seeks "a period of disability commencing September 31, 2001." Plaintiff's Application for Disability Insurance Benefits and her Disability Report both state that she became unable to work due to her disabling condition on September 15, 1999. However, for purposes of this court's review, the pertinent date is plaintiff's date last insured – September 30, 2000.

on plaintiff's Motion for Judgment (Doc. 8), which seeks reversal of the Commissioner's final decision and claims that the Commissioner's decision was not based on substantial evidence.

**I.   Facts**

    **A.   Plaintiff's Testimony**

Plaintiff testified at the hearing before the ALJ on April 27, 2004.  Plaintiff was born in 1960, and was forty-four years old at the time of the hearing.  Plaintiff alleged that she became disabled beginning September 15, 1999.  Plaintiff has a high school education as well as two years of college course work.  She lives with her husband and two children, aged nine and twelve at that time.  She last worked in 1998 as a general manager at Arby's.  Plaintiff testified that her job with Arby's ended because she was unable to do the basics of the job and could not be on her feet that much.

Plaintiff testified that her back problems began with her second pregnancy in 1994.  She testified that she underwent three back surgeries prior to a fourth surgery that she had while employed at Arby's.  Plaintiff was off work for one week after that surgery, and she returned to work at Arby's for two or three weeks, but she missed two or three days a week because back and leg pain kept her from getting out of bed. She testified she also developed pain in her cervical spine, and experienced occasional numbness in her hands and radiating pain in her shoulders.  She stated that she even underwent breast reduction surgery to try to ease her back pain.

When questioned about injuring her back while water skiing in the summer of 2000 and while coaching softball, plaintiff testified that she had not been water skiing, but that she may have hurt her back during softball.  Plaintiff explained that she had been an assistant coach for her daughter's team, but that she taught the girls verbally because she was unable to be physically involved in the games.

Plaintiff testified that she would sometimes stand on the field or sit on the bleachers, but she had to keep moving around because of pain.

At the hearing, plaintiff testified that, at that time, she suffered from chronic pain all the time. Plaintiff testified that she had problems raising her arms over her head and difficulty climbing stairs. The pain was worse if she was up for a long time but lying down eased the pain somewhat. Plaintiff stated she had taken pain medication off and on since her problems started, but had taken it more consistently in the year-and-a-half before the hearing. The pain medication gave her some relief, and she had also had a dorsal stimulator implanted in her back to help ease her back pain.

In describing her daily activities in 2004, plaintiff testified that she woke at about 6:00 a.m. and made sure her children got ready for school. She slept on the couch because she could not get comfortable in her bed. She testified that she did not get dressed every day because some days the pain was so bad she could not move. Three or four days a week she did not get up at all unless her pain subsided. Her husband did most of the cooking and cleaning because she was not able to do it herself. She did not wash the dishes because she could stand only a couple of minutes; standing caused pain in her back and right leg. Her husband also did the grocery shopping. Plaintiff testified that she tried not to drive because it caused pain in her right leg that led to shaking and spasms in her leg. Plaintiff watched television but had trouble concentrating because of her medication. Plaintiff claimed that her medication affected her memory. Plaintiff testified that she was taking medication for her blood pressure and Paxil for depression.

### B.     Plaintiff's Medical History through September 2000[2]

In plaintiff's Disability Report, she alleged disability due to degenerative disc disease. Plaintiff testified that she had three back surgeries prior to 1999 – a laminectomy in 1994, a second lumber laminectomy in 1996, and a third in 1998. After her third laminectomy, plaintiff was treated at Lawrence Memorial Hospital ("LMH") for back pain periodically through 1999.

On January 21, 1999, plaintiff was treated by Dr. John Lindsey at LMH and underwent a lumbar epidural steroid injection to alleviate lower back pain. Dr. Lindsey diagnosed plaintiff with acute radiculopathy. An MRI, performed on January 28, 1999, showed postoperative scarring on the right side and a thickened L5 nerve root versus small sequestered fragment on the right side at L4-L5.

Plaintiff saw Dr. Lindsey for her back pain again on February 3, 1999 and February 23, 1999. On February 23, 1999, plaintiff also saw Dr. Glenn Amundson, an orthopedic surgeon, for evaluation of her back pain. Dr. Amundson noted that plaintiff had a slow, antalgic gait. She was not able to heel or toe walk. Dr. Amundson noted that plaintiff was unable to extend past neutral and had very limited lateral bend. Straight leg raising produced low back pain on the right. Dr. Amundson diagnosed plaintiff with low back pain with three previous surgeries at the L4 transitional level. He noted that plaintiff's symptoms were increasing despite appropriate, multimodality management. Dr. Amundson discussed with plaintiff anterior lumbar interbodyfusion at the L4 transitional level with cages.

---

[2] Plaintiff has alleged that the ALJ did not fully consider her medical history and treatment between October 2000 and the date of her hearing before the ALJ. Plaintiff urged the court to consider the entirety of plaintiff's medical history. The court has thoroughly reviewed and considered the entirety of plaintiff's medical history, including the period between October 2000 and May 2004, but does not find it necessary to recount that portion of plaintiff's medical history herein.

-4-

Plaintiff returned to Dr. Lindsey at LMH for treatment of her low back pain and radiculopathy on March 17, 1999, April 15, 1999, May 10, 1999, May 27, 1999, and June 21, 1999.  Dr. Lindsey maintained his diagnosis of failed laminectomy and radiculopathy.

Plaintiff had an L4-5 and L5-S1 anterior interbody cage fusion on April 7, 1999.  Plaintiff saw Dr. Amundson for follow-up on June 22, 1999.  She reported that she was 75% better than prior to the surgery and that she took medication only rarely.  Dr. Amundson noted that plaintiff had no evidence of neurologic deficit.

On July 22, 1999, plaintiff returned to see Dr. Amundson and reported that she had good days and bad days, but was doing much better than before the surgery.  Plaintiff stated that she had some numbness in her right calf which was unchanged by the surgery, but that her pain was markedly improved.  Dr. Amundson noted that plaintiff had excellent strength in her feet.  Sensation was intact to light touch except in her right calf.  Dr. Amundson noted that plaintiff was doing well three months after her two level lumbar cage fusion.  Dr. Amundson prescribed physical therapy and pain medication.

Plaintiff continued to follow up with Dr. Lindsey for treatment of her low back pain.  On July 8, 1999, July 27, 1999 and August 24, 1999, plaintiff received additional treatment and prescription medications for her back pain and radiculopathy from Dr. Lindsey.

Plaintiff saw Dr. Amundson on September 14, 1999 and reported that she had some back discomfort, but that it was tolerable.  Dr. Amundson reviewed plaintiff's x-rays and noted that spinal alignment was maintained.

Plaintiff returned to Dr. Lindsey for follow-up of her back pain on September 20, 1999 and October 18, 1999.

She saw Dr. Amundson on November 9, 1999 and reported that her pain had improved significantly from prior to her surgery. Dr. Amundson noted that plaintiff walked with a normal gait and was able to walk on her toes and heels. He reported that plaintiff had no pain, numbness, or weakness.

Plaintiff returned to Dr. Lindsey on November 17, 1999, December 16, 1999, and January 11, 2000. On January 11, 2000, plaintiff reported that she had a decrease in her back pain and wanted to decrease her medication amounts.

Plaintiff went to the emergency room of Cushing Memorial Hospital ("CMH") on January 23, 2000 and reported back pain after a fall two to three days earlier. Manu Sondhi, M.D., noted that plaintiff had mild tenderness over her lumbar area with no swelling. Dr. Sondhi diagnosed plaintiff with a back sprain, gave her pain medication, and recommended she follow-up with her orthopedic physician. Plaintiff returned to the emergency room on January 30, 2000 and reported back pain that radiated down her right leg. She also stated that her legs were swelling. The emergency room doctor noted that plaintiff's back was tender and diagnosed her with back pain.

On February 1, 2000, plaintiff saw Dr. Amundson and reported that she fell down some stairs three weeks earlier. Dr. Amundson noted that plaintiff had pitting edema of her lower legs and an otherwise normal examination. He reported some tenderness in plaintiff's neck. She was neurologically normal. He diagnosed plaintiff with neck strain. X-rays of the lumbar spine, performed on that date, showed that plaintiff's intervertebral disc cages were in place. There was mild degenerative spurring at L4 with no acute fracture.

Plaintiff went to CMH on February 2, 2000 and complained of pain in her neck and swelling in her legs. X-rays of her cervical spine showed a reversal of the normal cervical curve with no other

significant abnormality. A CT of plaintiff's cervical spine, performed on February 4, 2000, showed no significant abnormality.

On February 22, 2000, plaintiff returned to Dr. Lindsey and complained of lumbar discomfort.

Plaintiff was seen at the CMH's emergency room on March 15, 2000, for flank pain. The examining doctor noted some upper paralumbar spasm on the left. Plaintiff had no radiation of pain, numbness, or tingling. Straight leg raising was negative. The doctor diagnosed plaintiff with back pain, left paralumbar musculoskeletal strain and recommended plaintiff avoid strenuous activity.

Plaintiff returned to Dr. Lindsey for follow-up of her low back pain on March 22, 2000 and May 4, 2000. Dr. Lindsey continued to prescribe pain medication.

Plaintiff saw Scott Thellman, M.D., on June 1, 2000 for evaluation for possible breast reduction surgery. Plaintiff reported occasional rashes under her breasts and upper thoracic pain. Dr. Thellman opined that plaintiff would benefit from breast reduction surgery.

On June 20, 2000, plaintiff reported to CMH's emergency room with increased back pain and complained that the back pain made her unable to sleep. The emergency room doctor noted moderate paravertebral muscle spasm in the thoracic and lumbosacral spine areas. Straight leg raising was negative and plaintiff had no radiation of pain in her legs. She was able to walk without pain. The examining doctor noted that plaintiff said she injured her back while water skiing over the weekend. The doctor prescribed medication to control pain and muscle spasm.

Dr. Thellman performed breast reduction surgery on plaintiff on June 23, 2000. He noted that she tolerated the procedure well. Plaintiff was doing well when she followed-up with Dr. Thellman on June 26, 2000. Plaintiff continued to recover and Dr. Thellman reported that she was doing well during her subsequent follow-up visits.

Plaintiff returned to CMH's emergency room with low back pain on September 12, 2000. She reported severe pain in her low back after water skiing the previous day. Plaintiff did not have any radiating pain in her legs. She was diagnosed with lumbosacral strain. The doctor prescribed pain medication and recommended bed rest and no heavy lifting. Plaintiff returned to the emergency room on September 27, 2000 and complained of low back pain. She was able to walk and had no neurological deficits.

### C.     Expert Testimony

A medical expert, Selbert Chernoff, M.D., testified at the hearing held on April 27, 2004. Dr. Chernoff stated that plaintiff had a very long history of back difficulty which included several surgeries: a laminectomy in 1994 and again in 1996, and another surgery in 1998. He noted that she was doing well after having an anterior fusion in April 1999 until she injured herself water skiing on two occasions in 2000. He noted she underwent anterior fusion with interbody cages in 1999, breast reduction surgery in 2000, and anterior cervical fusion in 2000. Dr. Chernoff testified that plaintiff's complaints of pain were credible except that, sometimes, she was not as limited as would be expected. He stated that it was difficult to assess her residual functional capacity ("RFC") because, at times she was very limited, and at other times she was at least moderately functional. Dr. Chernoff opined that there was only a very slight chance that plaintiff would come out of three back surgeries without chronic pain. Dr. Chernoff agreed with a consultative examiner who diagnosed chronic pain syndrome, degenerative disc joint disease, lumbar spine status post multiple laminectomy and fusion, and chronic cervical degenerative disc disease status post fusion.

A vocational expert ("VE"), Janice Hasfert, also testified at the hearing. The ALJ asked Ms. Hasfert to assume a person thirty-nine years of age with the same educational and work history as plaintiff. This individual would be restricted to work that would not require lifting more than ten

pounds occasionally and only two to three pounds frequently. In response, Ms. Hasfert testified that such an individual could not perform plaintiff's past relevant work, which Ms. Hasfert classified as skilled, light exertional work. She testified that plaintiff could perform other work in the sedentary category available in the economy such as security monitor, phone solicitor, and electronics assembler. These jobs would not be impacted if an individual's concentration, persistence and pace were mildly restricted, but moderate restriction would preclude any type of work activity. Ms. Hasfert stated there would be no jobs an individual could do if she missed two or three days of work each month.

## II.     Standard of Review

Pursuant to 42 U.S.C. § 405(g), a court may render "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court reviews the decision of the Commissioner to determine whether the correct legal standards were applied and whether the record as a whole contains substantial evidence to support the Commissioner's decision. *Doyal v. Barnhart,* 331 F.3d 758, 760 (10th Cir. 2003). The Supreme Court has held that "substantial evidence" is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971). In reviewing the record to determine whether substantial evidence supports the Commissioner's decision, the court may neither reweigh the evidence nor substitute its discretion for that of the Commissioner. *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). Nor will the findings be affirmed by isolating facts and labeling them substantial

evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Holloway v. Heckler*, 607 F. Supp. 71, 72 (D. Kan. 1985).

## III.   Discussion

Plaintiff bears the burden of proving disability under the SSA. *See Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). The SSA defines "disability" as the inability to engage in any substantial gainful activity for at least 12 months due to a medically determinable impairment. *See* 42 U.S.C. § 423(d)(1)(A). "[U]nder the governing regulations, the ALJ [is] required to develop plaintiff's medical history only for the twelve months preceding the month in which she filed her application . . . ." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (citing 20 C.F.R. § 416.912(d)). However, because plaintiff was last insured for benefits on September 30, 2000, to obtain disability insurance benefits, plaintiff had to establish that she became disabled on or before that date. Therefore, the relevant time period for considering plaintiff's medical condition is between September 30, 1999 and September 30, 2000, the twelve months prior to her last insured date. *See Washington v. Shalala*, 37 F.3d 1437, 1440 n.2 (10th Cir. 1994) (citing *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1347 (10th Cir. 1990)).

To determine disability, the Commissioner uses a five-step sequential evaluation. The Commissioner determines: (1) whether the claimant is presently engaged in "substantial gainful activity"; (2) whether the claimant has a severe impairment, one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) whether the claimant can do any kind of work. *See* 20 C.F.R. §§ 404.1520, 416.920. If a claimant

satisfies steps one, two and three, he will automatically be found disabled. If a claimant satisfies steps one and two, but not three, he must satisfy step four. If step four is satisfied, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

In this case, the ALJ determined that, as of plaintiff's date last insured, September 30, 2000, plaintiff had the severe impairments of degenerative disc disease of the lumbar spine; status post multiple lumbar surgeries including two lumbar laminectomies in 1994 and1996, and two level lumbar cage fusions at L4-5 and L5-S1 disc levels in 1998 and April 1999; status post bilateral reduction mammoplasty in June 2000; and degenerative disc disease of the cervical spine, status post anterior C5-6 cervical diskectomy and fusion in November 2000. The ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing of Impairments. After determining that plaintiff could not perform her past relevant work, the ALJ relied on the testimony of a VE to find that plaintiff was capable of performing jobs in the sedentary category, such as security monitor, phone solicitor, and electronics assembler, that existed in significant numbers in the national economy, as of her last insured date. The ALJ thus found that plaintiff was not disabled under the SSA and denied benefits at step five.

Plaintiff contends that she has established, through her testimony and the credible medical evidence, that her impairments render her disabled and unable to engage in substantial gainful activity. Plaintiff claims that the ALJ's credibility determination is not supported by substantial evidence in the record as a whole, and that the ALJ's assessment of her RFC and his reliance on the VE's testimony is also unsupported and should be reversed.

The Commissioner contends that the ALJ properly evaluated plaintiff's credibility and properly determined that plaintiff could perform other jobs in the national economy. The issue before this court is whether the ALJ's decision is supported by substantial evidence in the record.

### A.  Credibility Determination

In evaluating the ALJ's credibility determination of a plaintiff who has alleged disabling pain, the court considers:

> 1) whether Claimant established a pain-producing impairment by objective medical evidence; 2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimaint's subjective allegations of pain; and 3) if so, whether considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

*Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994) (quoting *Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992)). "'Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence.'" *McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). The court therefore examines whether there exists substantial evidence in the record to support the ALJ's credibility determination. Great deference should be given to the ALJ's conclusion as to credibility. *Campbell v. Bowen*, 822 F.2d 1518, 1522 (10th Cir. 1987).

In assessing plaintiff's credibility, the ALJ found that several factors reduced plaintiff's credibility. Specifically, the ALJ noted several inconsistencies between plaintiff's allegations of disabling pain, plaintiff's testimony, and the record as a whole.

Significantly, the ALJ found that the objective medical evidence does not support plaintiff's claims of disability prior to September 30, 2000. Specifically, on June 22, 1999, Dr. Amundson noted that plaintiff had no evidence of neurologic deficit. On July 8, 1999, he noted a decrease in sensation to light touch in plaintiff's right calf, but excellent strength in her feet. X-rays performed

-12-

in September 1999 showed that plaintiff's spinal alignment was maintained. On November 9, 1999, plaintiff walked with a normal gait and reported no pain, numbness, or weakness. On January 11, 2000, plaintiff requested a decrease in her pain medication because her pain had improved. X-rays of plaintiff's lumbar spine performed in February 2000 showed only mild degenerative spurring at L4. X-rays of her cervical spine performed in February 2000 showed a reversal of the normal curve with no other significant abnormality. A CT scan of her cervical spine during that same month showed no significant abnormality. In March 2000, plaintiff had some paralumbar spasm with no radiation of pain, numbness, or tingling. Plaintiff had moderate paravertebral spasm after she hurt herself water skiing in June 2000, but straight leg raising was negative, and plaintiff could walk without pain. Plaintiff was able to walk and had no neurological deficits after she hurt her back water skiing in September 2000.

The ALJ noted that plaintiff had an inconsistent work history with fluctuating levels of income. Plaintiff did not have any income in 1994 or 1995. She earned $52 in 1996, $5,548 in 1997, and over $20,000 in 1998.

The ALJ noted that plaintiff did not receive consistent treatment or care for her back pain during the relevant time period. The ALJ found that, while plaintiff had frequent follow-up for her back pain, she had significant complaints only after she fell in January 2000 and after she went water skiing in June and September 2000. The ALJ found that plaintiff's allegation of disability between September 1999 and September 2000 was inconsistent with the record, which the ALJ found revealed long periods with no significant complaints during that twelve-month period.

The ALJ also noted that plaintiff reported no significant problem with most activities of daily living in a questionnaire she completed in January 2002. The Commissioner contends that the ALJ did not rely solely on plaintiff's activities to establish the absence of a disability; rather, he

-13-

considered plaintiff's activities during the relevant time period as one factor, among many, that weighed against her credibility.

Plaintiff contends that the ALJ's finding that plaintiff's complaints of pain were not credible is not supported by substantial evidence on the record as a whole. While plaintiff acknowledges that she must establish that she became disabled on or before September 30, 2000, plaintiff contends that the ALJ should have considered the medical record beyond that date.

Plaintiff further contends that the record reflects that the objective medical evidence shows that she has a pain-producing impairment; that the proven impairment can reasonably be expected to produce the alleged pain; and that, considering all of the evidence, both subjective and objective, plaintiff's pain is disabling.

With regard to the evidence itself, first, plaintiff specifically challenges the ALJ's characterization of her medical treatment from late 1999 through 2000 as dealing with only acute ailments. Plaintiff points to specific instances when she sought treatment for her back pain and orthopedic complaints from Dr. Lindsey. Second, plaintiff takes issue with the ALJ seeming to discredit plaintiff's subjective complaints because of references to her attempts to water ski. Plaintiff points out that, when she received treatment following her attempts to ski, the examining doctors noted that her back pain complaints were of long-term onset and that plaintiff reported that her pain was not unusual, but that the skiing incident had worsened it. Third, plaintiff takes issue with the ALJ's reliance on plaintiff's answers on a form regarding her daily activities that she completed in January 2002. Plaintiff points out that she stated that she could shower or bathe on the days she was in less pain, usually only once or twice a week. Plaintiff also reported that she prepared three or four meals a week, but said she needed help with cooking because she could not always stand long enough to prepare a meal. Plaintiff also stated that when she could go grocery shopping, she needed

help lifting and carrying her groceries and putting them away. Plaintiff also stated that she had difficulty with reading because she could not sit for extended periods and had trouble sleeping because of pain. Plaintiff argues that the fact that she occasionally tried to help out at her daughter's softball games is not substantial evidence that she did not suffer disabling pain. Overall, plaintiff contends that the evidence shows that her daily activities were very limited by her pain during the period prior to her date last insured.

Having reviewed the record and considered the parties' positions, the court concludes that the evidence in the record as it is set forth above supports the ALJ's finding regarding a lack of objective medical evidence to support plaintiff's allegations of pain during the relevant time period – September 30, 1999 through September 30, 2000. When determining the credibility of pain testimony, the ALJ should consider the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence. *Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993). "To be disabling, pain must be severe enough – either by itself or in combination with other impairments to preclude substantial gainful employment." *Lowe v. Apfel*, 2000 WL 807534, at *4 (10th Cir. June 23, 2000) (citing *Brown v. Bowen*, 801 F.2d 361, 362-63 (10th Cir. 1986)).

It is undisputed that the ALJ noted other evidence, in addition to his review of the medical evidence and records, to support his determination that plaintiff was not credible to the extent she claimed she was disabled. In making a credibility determination, the ALJ is entitled to consider the extent of a claimant's daily activities, including work. *Kepler*, 68 F.3d at 391. The ALJ also noted

-15-

that he reviewed plaintiff's entire medical treatment records, and specifically noted that plaintiff underwent consistent medical treatment for her lumbar and cervical pain complaints since November 2000. However, for the period prior to her last date of insured, September 30, 2000, the ALJ specifically noted that plaintiff's medical treatment was sporadic, and that while plaintiff was occasionally limited in her activities due to various accidents, most of her emergency room visits showed no significant findings or recommendations for hospitalization, physical therapy, or further surgical intervention. In fact, the ALJ noted that plaintiff had returned to work for a period, although brief, in 1999 after her third laminectomy.

The court finds that the ALJ fully considered the entirety of plaintiff's medical history through the date of the hearing. However, the ALJ found no credible reason why plaintiff could not have performed sedentary work prior to September 30, 2000. The court agrees with the ALJ's assessment. Upon consideration of the ALJ's credibility determination, plaintiff's subjective complaints, in light of the objective medical evidence and plaintiff's activities prior to September 30, 2000, weigh against a finding of disability. While plaintiff's medical treatment and her testimony regarding her limitations and pain from November 2000 through the date of her hearing before the ALJ are compelling in favor of a disability finding, the substantial evidence does not support a finding of disability *prior* to September 2000, which is the relevant period for consideration. *See Washington*, 37 F.3d at 1440 n.2; *Potter*, 905 F.2d at 1347. Accordingly, because credibility determinations are ultimately left to the ALJ when supported by substantial evidence, and the evidence on the record as a whole supports the ALJ's determination, the court affirms the ALJ's credibility determination.

  **B.**  **Assessment of Plaintiff's RFC and Reliance on the VE's Testimony**

After making the credibility determination, the ALJ then found that plaintiff could not continue to perform her relevant past work but, based on a vocational expert's testimony, found that plaintiff could make a vocational adjustment to other work in the national economy. The ALJ specifically determined that plaintiff had a RFC to work at a sedentary job, specifically as a security monitor, phone solicitor, and electronics assembler – all jobs that exist in Kansas and in the national economy in significant numbers. The ALJ therefore found that plaintiff was not disabled within the meaning of the SSA.

Plaintiff contends that the ALJ ignored significant medical findings to reach the conclusion he desired. Plaintiff points out that Dr. Chernoff testified that plaintiff suffered "marked limitations" from her alleged onset date of disability. Dr. Chernoff also indicated that the chance of coming out of three back surgeries without chronic pain was very slight. Plaintiff also points to Dr. Hendler, who performed a consultative evaluation for the Administration, and reported that plaintiff would have to periodically alternate sitting and standing to relieve pain and discomfort, and should avoid vibration and hazards such as machinery and heights. Plaintiff contends that the ALJ failed to address these opinions and fails to point to any evidence in the record to support his finding that plaintiff retained the RFC to perform sedentary work.

Plaintiff further contends that the VE's testimony was defective in that it responded to a hypothetical which did not accurately detail all of plaintiff's limitations. Plaintiff contends that there is no evidence, especially in light of Dr. Hendler's opinion, to support a finding that she could sit throughout an eight-hour workday.

The Commissioner contends that the ALJ carefully considered the objective medical evidence, plaintiff's testimony, and other evidence in the record before determining that she could perform sedentary work. The Commissioner points out that the ALJ spent two and a half pages of his

decision evaluating the evidence before determining that plaintiff was capable of sedentary work prior to September 30, 2000.

With regard to Dr. Chernoff's opinion, the Commissioner points out that Dr. Chernoff testified, and the ALJ specifically noted, that it was difficult to assess plaintiff's RFC because she was very limited at times and moderately functional at other times. Although Dr. Chernoff also testified that it was likely that plaintiff had chronic pain, he did not testify that plaintiff had disabling pain.

With regard to plaintiff's arguments regarding Dr. Hendler's opinion, the Commissioner points out that Dr. Hendler's opinion is dated January 5, 2004, over three years after plaintiff's date last insured. The Commissioner further contends that, because the ALJ's hypothetical question to the VE was consistent with his assessment of plaintiff's RFC for the period September 30, 1999 to September 30, 2000, the VE's testimony provided substantial evidence that plaintiff could perform other work available in the economy prior to September 30, 2000.

The court agrees with the Commissioner that Dr. Hendler's opinion is not relevant to plaintiff's condition as of her date last insured, September 30, 2000. There is no indication that Dr. Hendler's opinion applied to plaintiff's condition at her date last insured of September 30, 2000, or that Dr. Hendler ever examined plaintiff during the relevant time period. As the court previously has noted, the relevant time period for assessing her RFC is September 30, 1999 through September 30, 2000. The court finds that the ALJ properly considered Dr. Chernoff's opinion, in conjunction with all of the other evidence in the record, in making his RFC determination. The record reflects that the ALJ never stated that plaintiff was pain-free; rather, he found, in light of the entire record, that her pain was not disabling prior to September 30, 2000. Accordingly, the court finds that substantial

evidence in the record as a whole supports the ALJ's finding on this issue, and the court affirms the ALJ's RFC determination.

Moreover, because the court finds that substantial evidence supports the ALJ's RFC determination, the court finds that the ALJ's hypothetical posed to the VE properly considered plaintiff's limitations for the relevant time period. Accordingly, the ALJ did not err in relying on the VE's testimony when he determined that plaintiff could have performed sedentary work prior to September 30, 2000.

**IT IS THEREFORE ORDERED** that plaintiff's Motion for Judgment (Doc. 8) is denied, and the final decision of the Commissioner is hereby affirmed.

Dated this 31st day of March 2006, at Kansas City, Kansas.

           **s/ Carlos Murguia**
           **CARLOS MURGUIA**
           **United States District Judge**